UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BREAKTHROUGH TOWING, LLC
and MICHAEL DICKERSON,

    Plaintiffs,                      CIVIL ACTION NO. 15-cv-12526

    v.                           DISTRICT JUDGE ARTHUR J. TARNOW

SCOTT HALL, ROHIT JOSHI,      MAGISTRATE JUDGE MONA K. MAJZOUB
WAYNE STATE UNIVERSITY,
and CITY OF DETROIT,

    Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO COMPEL [14]**

This matter comes before the Court on Plaintiffs Breakthrough Towing, LLC and Michael Dickerson's Motion to Compel Unredacted Version of Citizen's Complaints against Defendant Hall. (Docket no. 14.) Defendant City of Detroit responded to Plaintiffs' Motion (docket no. 16), and Plaintiffs replied to Defendant's Response (docket no. 18). The parties have also filed a Joint Statement of Resolved and Unresolved Issues regarding Plaintiffs' Motion to Compel. (Docket no. 34.) The Motion has been referred to the undersigned for consideration. (Docket no. 15.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

I.     **BACKGROUND**

Plaintiff Dickerson is the sole member of Plaintiff Breakthrough Towing, LLC, a Michigan limited liability company that tows vehicles in the City of Detroit pursuant to contracts

with businesses and insurance companies. (Docket no. 3 ¶ 10.) On December 26, 2014, one of Plaintiffs' tow-truck drivers towed a vehicle from the parking lot of a local McDonald's restaurant and subsequently went to the Third Precinct of the Detroit Police Department to have the vehicle entered into Michigan's Law Enforcement Information Network (LEIN). (Docket no. 3 ¶ 17; docket no. 14 at 11; docket no. 14-3 at 3.) Defendant Hall, the sergeant on duty at the time, denied the driver's request on belief that the vehicle was unlawfully towed. (Docket no. 3 ¶ 17; docket no. 14 at 11; docket no. 16 at 10.) Plaintiff Dickerson then advised the driver to tow the vehicle to Plaintiffs' storage yard. (Docket no. 14-3 at 3.) According to Plaintiffs, that same evening, and without probable cause, a search warrant, or consent, Defendant Hall and two other officers went to Plaintiffs' storage yard to recover the vehicle in question; Defendant Hall instructed one of those officers to break the lock on the gate securing the lot; and Defendant Hall then proceeded to tow away Plaintiffs' tow truck. (Docket no. 14 at 11.) Defendant Hall admits that he impounded Plaintiffs' tow truck because he believed that it was involved in the unlawful towing of the subject vehicle. (Docket no. 16 at 10.)

The next day, Plaintiff Dickerson filed a Citizen Complaint with the Detroit Police Department in which he alleged that Defendant Hall (1) prevented the LEIN Operator from entering a private property impound into the LEIN System; (2) broke the lock to gain entry onto his property; (3) removed a vehicle from his lot; (4) impounded his tow truck; and (5) referred University Liquor to another tow company. (Docket no. 14 at 11; docket no. 14-3 at 2.) Following an investigation, the Office of the Chief Investigator exonerated Defendant Hall on the portion of Plaintiff Dickerson's complaint regarding entry of the vehicle into the LEIN System, and it found that the portion of the complaint regarding Defendant Hall and University Liquor was unfounded. But the Office of the Chief Investigator sustained Plaintiff Dickerson's

complaint on the allegations that Defendant Hall broke the lock to gain entry onto Plaintiffs' property, removed a vehicle from the lot, and impounded Plaintiffs' tow truck. (Docket no. 14-3 at 13-18.)  Based on its investigative findings, in March 2015, the Office of the Chief Investigator recommended that Plaintiff Dickerson's Citizen Complaint be forwarded to the Chief of Police for the appropriate corrective or disciplinary action. (*Id*. at 18-19.)

On July 15, 2015, Plaintiffs filed the instant action against Defendants Hall and City of Detroit regarding the December 2014 incident described above.[1]  In the Amended Complaint, Plaintiffs allege, in relevant part, that (1) Defendant Hall violated Plaintiffs' Fourth Amendment right to be from unlawful search and seizure; and (2) Defendant City of Detroit created policies, practices, and customs regarding the police department's constitutional obligation to refrain from entering an individual's property for the purpose of seizing personal property without a search warrant, which policies, etc. demonstrated "deliberate indifference" to the constitutional rights of its citizens and was the moving force behind Defendant Hall's violation of Plaintiffs' rights. (Docket no. 3 ¶ 34.)  A Stipulated Order for Partial Summary Judgment was entered against Defendant Hall on August 5, 2016, holding that he is liable for violating Plaintiffs' clearly established Fourth Amendment right against unlawful search and seizure, irrespective of the existence or non-existence of probable cause. (Docket no. 25.)

The disputed discovery in this matter is Defendants' production of three redacted citizen complaint investigation reports filed against Defendant Hall, including the one filed by Plaintiff Dickerson, produced in response to Plaintiffs' Request for Production (RFP) no. 13, which requested "All documents relating to any internal police investigation arising out of the seizures of Plaintiffs' property on November 16, 2014 and/or December 27, 2014." (*See* docket no. 14 at

---

[1] The Complaint also included claims against Defendants Rohit Joshi and Wayne State University regarding unrelated events that took place on November 16, 2014. (*See* docket no. 1.)  These claims have since been dismissed. (Docket no. 36.)

12; docket no. 14-5 at 9 (emphasis omitted).)  On December 30, 2015, Defendants produced the three investigation reports and other documents informally via email in response to Plaintiffs' informal email request to receive the documents requested before the holidays.  (Docket no. 16-3 at 1.)  Defendants' production was accompanied by the following disclosure:

> You will note that we have produced internal police documents regarding complaints and investigations regarding Sergeant Hall, and his personnel file, but I have redacted certain portions based on confidentiality concerns, the deliberative process privilege and the law enforcement privilege.

(*Id.*)  As Defendants' counsel further explained a few days later, all of the witness statements and factual matters were reviewed; the nature of the charges and allegations, and the final decisions reached were not redacted from the investigation reports; the only portions of the reports that were redacted are those in which the police department was evaluating the allegations, facts, and law.  (Docket no. 16-4 at 1.)  Later, in their January 20, 2016 formal response to Plaintiffs' RFP no. 13, Defendants stated, "On information and belief, all of these documents were provided to Plaintiffs on December 30, 2015."  (Docket no. 14-5 at 9.)  Plaintiffs now seek production of the unredacted versions of the citizen complaint investigation reports through the instant Motion to Compel.  (Docket no. 14.)

## II.   GOVERNING LAW

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.  *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998).  Parties may obtain discovery on any matter that is not privileged, is relevant to any party's claim or defense, and is proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Information need not be admissible in evidence to be

discoverable. Fed. R. Civ. P. 26(b)(1). But the scope of discovery is not unlimited. "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed. R. Civ. P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). If the party receiving discovery requests under Rules 33 or 34 fails to respond properly, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B). If a court grants a Rule 37 motion to compel, or if discovery is received after a Rule 37 motion is filed, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

### III.   ANALYSIS

Plaintiffs argue that the citizen complaint investigation reports are not subject to the deliberative process privilege, and even if they are, the privilege is waived because Defendants did not properly invoke the privilege. (Docket no. 14 at 13-18.) Reports of misconduct, investigations and dispositions of citizen complaints, and portions of these documents may be protected from disclosure and discovery by the executive or "deliberative process" privilege. Under the deliberative process privilege "intra-government documents which reflect advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated" are protected from disclosure in discovery.

*Dowd v. Calabrese*, 101 F.R.D. 427, 430 (D.D.C. 1984).  Factual material, including reports and summaries, is not protected by the privilege. *See Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344-46 (E.D. Pa. 1973).  "[T]he key issue in applying this exception is whether disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency." *Rugiero v. Dep't of Justice*, 257 F.3d 534, 550 (6th Cir. 2001) (internal quotations and citations omitted).  "Accordingly, a governmental entity asserting the privilege must show that the material sought is pre-decisional and deliberative." *Bayliss v. New Jersey State Police*, 622 F. App'x 182, 185 (3d Cir. 2015) (citing *Abdelfattah v. U.S. Dep't of Homeland Sec.,* 488 F.3d 178, 183 (3d Cir. 2007); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.,* 55 F.3d 827, 853-54 (3d Cir. 1995)).

"The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." *In re Sealed Case*, 121 F.3d 729, 737–38 (D.C. Cir. 1997) (footnote omitted).  "This need determination is to be made flexibly on a case-by-case, ad hoc basis." *Id*.  Thus, when faced with an assertion of the deliberative process privilege, "a court deciding whether to grant discovery must consider, among other factors, '(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.'" *Bayliss*, 622 F. App'x at 186 (quoting *Redland Soccer Club*, 55 F.3d at 854).

As an initial matter, the Court will address Plaintiffs' argument that Defendant City of Detroit waived its claim of privilege because it failed to properly invoke the privilege in accordance with *United States v. Reynolds*, 345 U.S. 1 (1953).  (Docket no. 14 at 16-17.)  In

6

*Reynolds*, the Supreme Court provided that to properly invoke the privilege that protects military and state secrets, "[t]here must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *Reynolds*, 345 U.S. at 7–8. Several circuit and district courts have extended this rule to the deliberative process privilege, including many district courts located within the Eastern District of Michigan and the Sixth Circuit. *See, e.g.*, *Liuzzo v. United States*, 508 F. Supp. 923, 937 (E.D. Mich. 1981) (Joiner, J.); *Moody v. Michigan Gaming Control Bd.*, No. 12-cv-13593, 2013 WL 3013862, at *4 (E.D. Mich. June 18, 2013) (Drain, J.); *E.E.O.C. v. Peoplemark, Inc.*, No. 1:08-CV-907, 2010 WL 748250, at *3 (W.D. Mich. Feb. 26, 2010); *United States ex rel. Martin v. Life Care Centers of Am., Inc.*, No. 1:08-CV-251, 2015 WL 12917012, at *3 (E.D. Tenn. Apr. 27, 2015); *Hill v. Waste Mgmt., Inc. of Tennessee*, No. 1:10-CV-0033, 2011 WL 3475545, at *5 (M.D. Tenn. Aug. 9, 2011).

Defendants point out, however, that there is no Sixth Circuit precedent extending the *Reynolds* requirements to the deliberative process privilege, and other courts have held that the deliberative process privilege may be asserted by counsel. (*See* docket no. 16 at 21-22 (citing *U.S. Dep't of Energy v. Brett*, 659 F.2d 154, 155-56 (Temp. Emer. Ct. App. 1981) and *Founding Church of Scientology of Washington, D.C., Inc. v. Dir., F.B.I.*, 104 F.R.D. 459, 465-66 (D.D.C. 1985)).) *See also Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1306 (Fed. Cir. 2006) ("[O]ur sister circuits have split over whether the Agency head invocation rule outlined in *Reynolds* applies to the deliberative process privilege as well as the military and state secrets privilege.") (citing cases). In declining to extend the requirements for invoking the military or state secrets privilege set forth in *Reynolds* to the deliberative process privilege, the Temporary Emergency Court of Appeals stated:

> The requirements for properly asserting [the deliberative process] privilege are set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Vaughn does not specifically require the filing of affidavits by any agency officials. Rather, affidavits or testimony are necessary under Vaughn only if the agency wishes to avoid in camera inspection of the documents by the trial court. See 484 F.2d at 826 n.20, citing *EPA v. Mink*, 410 U.S. 73, 93-94, 93 S.Ct. 827, 839, 35 L.Ed.2d 119 (1973). See also *Crooker v. Office of Pardon Att'y*, 614 F.2d 825, 828 (2d Cir. 1980). In this case, the DOE is not only willing to submit the documents to an in camera inspection but, in fact, seeks such an inspection. Thus, an affidavit or testimony from a responsible DOE official was unnecessary to assert the privilege effectively.

*Brett*, 659 F.2d at 155.  And in deciding to follow the principles outlined in *Brett*, the District Court for the District of Columbia explained:

> It may be that where deliberative process privilege material also involves assertion of the executive privilege for highly sensitive policy making material, scrutiny by the head of the department may be required, but it can hardly be intended that deliberative process material generated at the working attorney staff level or by mid-level managers or administrators must be reviewed by the head of a department or agency. Such a requirement would be an unwarranted imposition on the time of the heads of departments and agencies, who need to be free to devote their time to major policy issues and the management of their departments and agencies.

*Founding Church of Scientology of Washington, D.C., Inc.*, 104 F.R.D. at 465.  This Court is aligned with the views enunciated in *Brett* and *Founding Church of Scientology of Washington, D.C.*, and in the absence of binding precedent from the Sixth Circuit, the Court declines to extend the *Reynolds* requirements for invoking the military and state secrets privilege to Defendants' assertion of the deliberative process privilege in this matter, particularly where Defendants have consistently been willing to produce (and have produced) the documents to the Court for an *in camera* review and the documents do not constitute "highly sensitive policy making material" such that scrutiny by the head of the department would be required.[2]

---

[2] The Court acknowledges Defendants' recent (and untimely) submission of the Affidavit of Pamela L. Davis-Drake, the Chief Investigator in the Office of the Chief Investigator of the City of Detroit, in which she affirms that she has reviewed the documents at issue and inexplicitly asserts the deliberative process privilege with regard to the

A party claiming that otherwise discoverable information is privileged must expressly make the claim and describe the nature of the documents, communications, or tangible things withheld in a manner that will enable other parties to assess the claim. Fed. R. Civ. P. 26(b)(5)(A). Here, upon production of the citizen complaint investigation reports, Defendants' counsel informed Plaintiffs' counsel, albeit informally, that he had redacted certain portions of those reports based on confidentiality concerns, the deliberative process privilege, and the law enforcement privilege. (Docket no. 16-3 at 1.) Subsequently, upon Plaintiffs' counsel's challenge to the assertion of privilege, Defendants' counsel provided further explanation for application of the privilege, including references to legal precedent and an expanded description of the content of the redacted portions of the documents. (Docket nos. 16-4 and 16-5.) The Court finds that Defendants' counsel's initial assertion of the privilege was sufficient to satisfy the requirements of Rule 26(b)(5)(A); moreover, counsel's subsequent, supplemental explanations were more than adequate to enable Plaintiffs to assess the claim of privilege. Accordingly, the Court finds that Defendants properly invoked the deliberative process privilege with regard to the redacted portions of the citizen complaint investigation reports in this matter, and Plaintiffs' argument regarding waiver fails.

Alternatively, Plaintiffs argue that the citizen complaint investigation reports are not subject to the deliberative process privilege because the privilege is unavailable where, as here, the City's decision-making process or malfeasance is at issue. (Docket no. 14 at 14-15.) Specifically, Plaintiffs argue that although Plaintiff Dickerson's complaints of illegal entry and seizure were sustained by the Office of the Chief Investigator, Defendants' discovery responses suggest that Defendant Hall was not disciplined by Defendant City of Detroit for his illegal

---

redacted portions of those documents. (Docket no. 37.) Had the Court extended *Reynolds* to this matter, this Affidavit would likely have cured any defect in Defendants' invocation of the deliberative process privilege.

conduct. Plaintiffs continue that the City's decision making in connection with the citizen complaints against Defendant Hall is therefore "the issue" in this matter. Plaintiffs further argue that the City's decision making, along with the City's alleged policy of ratifying unconstitutional searches and seizures, goes to the heart of Plaintiffs' *Monell* claim.

To support this argument, Plaintiffs rely on an opinion from the United States Court of Appeals for the District of Columbia Circuit, which provides, in relevant part, that "the common law deliberative process privilege is not appropriately asserted . . . when a plaintiff's cause of action turns on the government's intent[,]" as "it makes no sense to permit the government to use the privilege as a shield." *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d 1422, 1424 (D.C. Cir.), *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) (fraudulent transfer action against the FDIC). This is not a well-settled legal principle, however. The United States District Court for the Northern District of Illinois recently discussed this issue in the context of a *Monell* claim substantially similar to Plaintiffs' *Monell* claim in this matter:

> Plaintiffs argue that their Complaint alleges that the City and IPRA have intentionally protected, covered-up, and failed to hold Officer Kelly accountable for his "long history of violent misconduct, which caused Plaintiffs' unconstitutional violations to occur." For this reason, they contend, the City's intent (which can only be revealed through its deliberations) is critically important to Plaintiffs' *Monell* claim. However, if this rationale were accepted by the Court, the privilege would be overcome in any case in which the government's intent is called into question, rendering the deliberative process privilege a nullity in any case with a *Monell* claim. The Court believes that the mere allegation that a governmental unit acted improperly cannot open the door to its entire decision-making process without a further and careful examination of the relevance of the particular documents to the specific allegations in the case.

*Turner v. City of Chicago*, No. 15 CV 06741, 2017 WL 552876, at *3 (N.D. Ill. Feb. 10, 2017). This Court has elected, in its discretion, to conduct such an examination here.

In accordance with a March 16, 2017 Order, Defendants have provided the Court with unredacted copies of the citizen complaint investigation reports at issue in this matter. The Court

has since reviewed the documents in their entirety and has determined that the deliberative process privilege applies to the redacted portions of the documents, as they reflect the analysis, evaluation, deliberations, and opinions of the personnel of the Office of the Chief Investigator. The Court has also considered the redacted information in conjunction with Plaintiffs' *Monell* claim and the balancing factors enumerated in *Bayliss, supra*, and finds that the relevance of the information, if any, is marginal. Therefore, Plaintiffs' need for the information is insufficient to overcome Defendant City of Detroit's interest in protecting the information and preventing any "future timidity" of its investigators through application of the deliberative process privilege.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel [14] is **DENIED.**

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: March 29, 2017         s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: March 29, 2017         s/ Lisa C. Bartlett
                              Case Manager

11