UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BREAKTHROUGH TOWING, ET. AL.,

        Plaintiff,

v.

SCOTT HALL, ET. AL.,

        Defendant.

                              /

Case No. 15-12526

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
MONA K. MAJZOUB

**ORDER GRANTING MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT [24]**

Plaintiffs filed a complaint alleging claims of §1983, common law conversion and statutory conversion on July 15, 2015.[1] Defendants filed a Motion for Summary Judgment as to Counts II and III on August 4, 2016. [24]. Plaintiffs responded on August 23, 2016 [26] and Defendants replied on September 7, 2016 [27]. A hearing was held on the Motion on March 28, 2017. For the reasons stated below, Defendants' Motion to Dismiss or for Summary Judgment [24] is **GRANTED**.

**FACTUAL BACKGROUND**

Late in the evening on December 26, 2014, Andre Jones ("Jones"), a driver for Plaintiff Breakthrough Towing, towed a black 2006 Chevrolet Malibu, owned by Jeremy Goss ("Goss"), from a McDonald's parking lot on Woodward Ave. in Detroit.

---

[1] Defendants Rohit Joshi and Wayne State University were dismissed via a stipulated order on March 15, 2017. [36]. Judgment on Count I, a §1983 claim for a Fourth Amendment violation, was granted against Defendant Scott Hall only on August 2, 2016 per stipulated order. [25].

Plaintiff had a contract with McDonalds to tow illegally parked cars. By the evening, Breakthrough Towing had already been called out several times to tow illegally-parked cars from the Woodward McDonald's parking lot, and had registered at least two other vehicles towed from that McDonalds with the Detroit Police Department (DPD) 3rd Precinct. [26-2].

Per City of Detroit procedures and state law, the tow truck driver proceeded to the DPD 3rd Precinct to log the vehicle with the DPD to ascertain if the vehicle had been reported as stolen. When Jones arrived at the DPD 3rd Precinct, Defendant Scott Hall ("Defendant Hall") was working. He overheard that a driver from Breakthrough Towing was attempting to log in a privately-impounded car with the police department. Defendant Hall approached to investigate further the logging in of the car because, on November 15, 2014, Breakthrough had attempted to impound multiple cars from locations on Woodward without the request of the property owner. [24-11].

Per DPD Standard Operating Procedures for private towing ("SOP"), when a tow driver presents the tow slip to an officer for a LEIN search, "the tow slip must include the authorized (legible) name of the person who requested the tow." [24-9 at 5]. The tow slip presented to Defendant Hall in the evening of December 26, 2014 did not include the signature or name of the property owner who allegedly had requested that the vehicle be towed. [24-12 at 46-47]. Therefore, Defendant Hall determined that the car had been towed in violation of MCL 257.252a and the SOP of the DPD, and directed the driver return the vehicle from where it had been towed, and obtain a name

to enter on the slip, and bring the car back in order to legally tow the car. [24-12 at 49-51].

At around 12:15am on December 27, 2014, approximately one hour after Hall's interaction with the tow truck driver, Goss entered the 3rd Precinct to report his black Chevrolet Malibu stolen from the McDonalds on Woodward. [26-6]. Defendant Hall suspected that Goss's car was the vehicle that had been illegally towed earlier in the night by Breakthrough Towing and asked Goss to drive to Breakthrough Towing's storage yard at 1761 W. Forest to see if he could identify his car as being located there. [24-12 at 63-64, 67-68, 71].

Goss later called the 3rd Precinct and stated that he did indeed see his car at Breakthrough Towing's storage yard. [24-12 at 82]. Following this call, Hall instructed desk officer Wintcher to enter a stolen vehicle report in the LEIN and then Defendant Hall assembled a group of other police officers to go to Breakthrough Towing's storage yard. [24-11].

The police officers, including Defendant Hall, arrived at the storage yard at approximately 4:00am. The lot was fenced in with a chain link fence, through which Goss could identify his car, which Defendant Hall believed to have been illegally towed since the tow truck driver had never returned with a signed slip in violation of his directive. [24-12 at 84]. Defendant Hall could see through the fence a Breakthrough Towing tow truck as well, which he believed to have been involved in the allegedly illegal towing of Goss' car. [24-12 at 84, 75]. Defendant Hall could not

provide any evidentiary basis for his belief that that specific truck was used to tow Goss' car. [26-5 at 75]. Defendant Hall testified that he believed that he was authorized by the plain view doctrine to forcibly enter the lot to retrieve Goss' car and seize the tow truck without a search warrant. [24-12 at 84, 75].

According to Officer Rodgers, he was ordered to break the lock with a bolt cutter or hammer per Hall's instruction. [26-7 at 10]. Officer Hall does not recall directing Rodger to break the lock open, but it is undisputed that the lock on the fence was broken by the police on the scene. [24-10, 24-11, 24-12]. Once the lock was broken, Goss was allowed to recover his car and the police impounded the visible Breakthrough Towing Truck for being used in the commission of the illegal tow. *Id*. The tow truck was returned to Plaintiff on January 5, 2015 and Plaintiff was never charged with theft of Goss' car.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the

light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### 1. QUALIFIED IMMUNITY ANALYSIS FOR CONVERSION CLAIMS[2]

In Michigan, common law conversion is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc. v. Columbian Distribution Servs.*, Inc., 497 Mich. 337, 346, 871 N.W.2d 136, 141, reh'g denied sub nom. *Aroma Wines & Equip., Inc. v. Columbian Distribution Servs., Inc.*, 498 Mich. 877, 869 N.W.2d 272 (2015). Defendant does not defend against the common law conversion claim on the merits, but rather he argues that governmental immunity under Michigan law should apply to both common law and statutory conversion claims.

Under Michigan law, governmental employees are immune from intentional tort claims under MCL 691.1407(3) if:

> a. The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> b. the acts were undertaken in good faith, or were not undertaken with malice, and

---

[2] Per Plaintiffs' response, Plaintiff withdraws his claims of conversion as to City of Detroit and only brings these against the individual Defendant Hall [26 at 8].

      c. the acts were discretionary, as opposed to ministerial.

*Odom v. Wayne Cty.*, 482 Mich. 459, 480, 760 N.W.2d 217, 228 (2008). This immunity has been held to be broadly applicable and includes not only common law tort claims but also damage claims that arise from statutes. *See Tate v. City of Grand Rapids*, 256 Mich. App. 656 (2003). Michigan Courts have dismissed both common law and statutory claims of conversion asserted against municipalities as being barred under government immunity. *See e.g. Rankin v. City of Highland Park*, No. 318385, 2015 WL 773734, at *5 (Mich. Ct. App. Feb. 24, 2015), app den 498 Mich.l 9209; 871 N.W. 2d 173 (2015). Therefore, the qualified immunity analysis applies to both claims.

      **a. ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT**

Plaintiff argues that Defendant was not acting within the scope of his employment, because he has already stipulated that he violated Plaintiff's Fourth Amendment rights by seizing the truck, and that therefore Defendant cannot argue that he reasonably believed, or was acting within the scope of his authority [26 at 9].

When considering whether acts are done within the scope of a government employee's authority, the Court must consider "whether the general activity and not the specific conduct involved at the time of the alleged torts is within the authority of the government officials." *McCarthy v. Brownstown Twp.*, No. 289651, 2010 WL 1568475, at *6 (Mich. Ct. App. Apr. 20, 2010). Therefore, the fact that the acts are

conceded to have not been a valid exercise of police power is irrelevant to this analysis. Rather, the general activity of investigating crimes, attempting to locate and retrieve stolen property, and attempting to seize evidence used in the commission of a crime are obviously all within the scope of Defendant's authority as a police officer. Therefore, the first element of the *Odom* test for intentional tort qualified immunity is met.

### b. GOOD FAITH

Plaintiff argues that, since conversion is an intentional tort, the defense of good faith is unavailing, citing *Willis v. Ed Hudson Towing, Inc.*, 109 Mich. App. 344, 349; 311 N.W. 2d 776 (1981). However, subsequent to this decision, *Odom v. Wayne Co.*, 482 Mich. 459, 480 (2008) clarified that government employees enjoy qualified immunity as laid out in *Ross v. Consumer Power Co.*, 420 Mich. 567; 363 N.W. 2d 641 (1984), which expressly includes good faith. Therefore, the Court must undertake a good faith analysis.

Good faith in the context of qualified immunity for intentional tort liability "is subjective in nature." *Odom*, 482 Mich. at 481–82. A government employee does not act in good faith if they act "maliciously or with a wanton or reckless disregard of the rights of others." *Id* at 474. To establish willful and wanton misconduct, there must be either intent to harm, or "such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Rankin v. City of Highland Park*, No.

318385, 2015 WL 773734, at *6 (Mich. Ct. App. Feb. 24, 2015), *appeal denied*, 498 Mich. 920, 871 N.W.2d 173 (2015), quoting *Odom*, 482 Mich. at 474.

In this case, Defendant followed police procedure through his investigative process, for what he subjectively believed to be a stolen vehicle subject to the plain view warrant exception. He subjectively believed that the plain view doctrine provided authority for him to enter the lot to return the car that he believed was stolen, as well as to impound the tow truck as evidence of the crime. There is no evidence that he acted without subjective belief that he was following the law, or that he showed indifference to whether harm would result. In fact, there appears to be no alleged damage to the tow truck at all in the complaint and no allegations that Defendant acted recklessly in his subjective belief and his impounding of the tow truck. Therefore, good faith is satisfied.

### c. DISCRETIONARY ACTS

It is not disputed that Defendant's acts were clearly discretionary rather than ministerial. Discretionary acts "require personal deliberation, decision and judgment." *Odom*, 482 Mich. at 476. Here, Defendant was in charge of the investigation of the pertinent facts of this case from the moment that the tow truck driver entered the precinct, and that he engaged in personal deliberation, employing his judgment, however faulty, throughout the course of the events. Therefore, the third element of the *Odom* test is satisfied and summary judgment is granted for both conversion claims.

**IT IS ORDERED** that Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment [24] is **GRANTED**.

**SO ORDERED**.

|  |  |
|---|---|
|  | s/Arthur J. Tarnow |
|  | Arthur J. Tarnow |
| Dated: March 29, 2017 | Senior United States District Judge |